1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEITH LEERAY KINCADE,                       No.  2:24-cv-01508-SCR

12                 Plaintiff,

13         v.                                     MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for supplemental security income ("SSI") under

20   Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.  Plaintiff argues that

21   the administrative law judge ("ALJ") failed to consider his inability to read when the ALJ

22   determined that there were a significant number of jobs in the national economy that he can

23   perform.  ECF No. 16 at 6-8.  For the reasons that follow, the Court will DENY Plaintiff's motion

24   for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

25   ////

26   ////

27   ////

28   ////

                                              1

# I. PROCEDURAL BACKGROUND

Plaintiff applied for SSI in March 2022, alleging disability beginning in April 2021. Administrative Record ("AR") 232-238.[1]  The applications were disapproved initially, and on reconsideration.  On September 14, 2023, ALJ Jason Crowell presided over a hearing on the disapprovals.  AR 38-65 (transcript).  Plaintiff participated in the hearing, and was represented by counsel.  A vocational expert, Erin Hunt also testified.  AR 327.

On November 14, 2023, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability, as defined in the Act, from March 2022 through the date of the decision. AR 20-33 (decision).  On March 25, 2024, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  AR 1-3 (decision).

Plaintiff filed this action on May 28, 2024.  ECF No. 1.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 16 (Plaintiff's summary judgment motion), 19 (Commissioner's summary judgment motion), 20 (Plaintiff's notice in lieu of reply).

# II. FACTUAL BACKGROUND[2]

Plaintiff was 39 years old at the time of the alleged onset of disability and when he applied for SSI.  AR 232.  Plaintiff has a sixth-grade education.  AR 71.  At the 2023 hearing before the ALJ, Plaintiff's counsel's opening statement focused on his mental impairments.  AR 44-45. Counsel also offered argument about left eye pain and headaches following a July 2022 motor vehicle accident.  AR 46.[3]  Plaintiff was questioned about some work he did for a homecare and hospice organization in 2017 and 2018, but the testimony about his job responsibilities was vague.  AR 49-50.  He testified he was taking care of his nephew.  AR 50.  Plaintiff testified he

---

[1]  The AR is electronically filed at ECF No. 7.  Page references to the AR are to the number in the lower right corner of the page.  For briefs, page references are to the CM/ECF generated header in the upper right corner.

[2]  The Court will not set forth the factual background/medical evidence in detail as there is only one issue raised, concerning Plaintiff's ability to read.  Plaintiff otherwise "stipulates that the ALJ fairly and accurately summarized the medical and non-medical evidence of record, except as specifically stated."  ECF No. 16 at 5.

[3]  Headaches were not found to be a severe impairment at Step 2 (AR 26) and that finding is not challenged.

2

1    has difficulties concentrating, gets panic attacks being around people, and has trouble reading.

2    AR 53-56.

3        The vocational expert ("VE") testified that a person of Plaintiff's age and education, with

4    Plaintiff's limitations, would be able to perform work in the national economy. AR 60. The VE

5    identified three positions:  Cleaner II, Commercial Cleaner, and Housekeeping Cleaner, all of

6    which were unskilled. AR 60-61. The VE was examined by Plaintiff's counsel. AR 61-64. The

7    VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT).

8    AR 64-65.

9                              **III.  LEGAL STANDARDS**

10       The Commissioner's decision that a claimant is not disabled will be upheld "if it is

11   supported by substantial evidence and if the Commissioner applied the correct legal standards."

12   *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the

13   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews*

14   *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

15       Substantial evidence is "more than a mere scintilla," but "may be less than a

16   preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Substantial evidence

17   "means—and means only such relevant evidence as a reasonable mind might accept as adequate

18   to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation and

19   citation omitted). "While inferences from the record can constitute substantial evidence, only

20   those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063,

21   1066 (9th Cir. 2006) (citation omitted).

22       Although this Court cannot substitute its discretion for that of the Commissioner, the court

23   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

24   evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*,

25   846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The

26   court must consider both evidence that supports and evidence that detracts from the ALJ's

27   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

28   ////

                                       3

1    "The ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

3    Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

4    which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*,

5    278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

6    ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*

7    *v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

8    2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

9    evidence that the ALJ did not discuss").

10    The court will not reverse the Commissioner's decision if it is based on harmless error,

11    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

12    ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.

13    2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v.*

14    *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

15    ## IV.  RELEVANT LAW

16    SSI is available for eligible individuals who are "disabled."  42 U.S.C. § 1381a.  An

17    individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any

18    medically determinable physical or mental impairment which can be expected to result in death or

19    which has lasted or can be expected to last for a continuous period of not less than twelve

20    months."  42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

21    The Commissioner uses a five-step sequential evaluation process to determine whether an

22    applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

23    *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

24    process to determine disability" under Title II and Title XVI).  The following summarizes the

25    sequential evaluation:

26    > Step one: Is the claimant engaging in substantial gainful activity?  If
     > so, the claimant is not disabled.  If not, proceed to step two.

27    20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

28

4

1

2
       Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

*Id.*, §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

3

4

5
       Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

6
*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

7

8
       Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

9
*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

10

11
       Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

12
*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

13      The claimant bears the burden of proof in the first four steps of the sequential evaluation

14  process.  20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are

15  blind or disabled"); *Bowen*, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential

16  analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled

17  and can engage in work that exists in significant numbers in the national economy."  *Hill v.*

18  *Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

19  **V.  THE ALJ's DECISION**

20      The ALJ made the following findings:

21

22
    1. [Step 1] The claimant has not engaged in substantial gainful activity since the application date, although Plaintiff did work after the application date (AR 25-26).

23

24

25
    2. [Step 2] The claimant has the following severe impairments: left lagophthalmos; persistent depressive disorder; general anxiety disorder; attention deficit-hyperactivity disorder; a learning disability; borderline intellectual functioning; and post-traumatic stress disorder (AR 26).

26

27
    3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 26-28).

28

5

1    4. [Preparation for Step 4] The claimant has the residual functional
      capacity to perform a full range of work at all exertional levels but
2    with the following non-exertional limitations: he must avoid
      concentrated exposure to dusts, extreme cold, and extreme heat.
3    Additionally, he would be limited to simple, routine, and repetitive
      tasks, in a work environment free of fast-paced production
4    requirements, involving only simple work-related decisions, few
      workplace changes, and only occasional interaction with the public,
5    co-workers, and supervisors.  (AR 28).

6    5. [Step 4] The claimant has no past relevant work. (AR 32).

7    6. [Step 5] The claimant was born in 1982 and was 39 years old on
      the date the application was filed, which is defined as a "younger
8    individual".  20 CFR § 416.963 (AR 32).

9    7. [Step 5, continued] The claimant has a marginal education (20
      C.F.R. 416.964) (AR 32).
10

11   8. [Step 5, continued] Transferability of job skills is not at issue
      because the claimant does not have past relevant work (AR 32).

12   9. [Step 5, continued] Considering the claimant's age, education,
      work experience, and residual functional capacity there are jobs that
13   exist in significant numbers in the national economy that the claimant
      can perform (AR 32).
14

15   10. The claimant has not been under a disability, as defined by the
      Act, from March 2, 2022, through the date of decision (AR 33).

16                              **VI.  ANALYSIS**

17        Plaintiff raises essentially only one issue before this Court – that the ALJ did not

18   adequately consider Plaintiff's inability to read.  ECF No. 16 at 6.  In making this argument,

19   Plaintiff contends that the ALJ did not adequately explain why he discounted Plaintiff's testimony

20   about reading, and also argues that Plaintiff's inability to read means he could not perform the

21   occupations identified by the VE because those jobs were language level 1.  *Id*. at 6-8.  Defendant

22   argues that Plaintiff has waived this argument by not raising it at the hearing and allowing the VE

23   and the ALJ the opportunity to address it.  ECF No. 19 at 5.  If not waived, Defendant contends

24   that the ALJ properly considered Plaintiff's marginal education and difficulty reading.  *Id.* at 6-8.

25        As Plaintiff frames the issue in part as the ALJ's failure to resolve a conflict between the

26   VE's testimony and the DOT's language level 1, the Court does not find the issue waived.  *See*

27   *Shaibi v. Berryhill*, 888 F.3d 1102, 1109 (9th Cir. 2017) ("It is true that an ALJ is required to

28   investigate and resolve any apparent conflict between the VE's testimony and the DOT,

                                            6

1    regardless of whether a claimant raises the conflict before the agency."); *see also Obrien v.*

2    *Bisignano*, 142 F.4th 687, 701 (9th Cir. 2025) (finding administrative issue-exhaustion did not

3    preclude consideration of the merits and explaining that prior Ninth Circuit cases "hold that

4    claimants generally may not present new evidence, and new issues dependent on that evidence,

5    that they failed to present to the ALJ."). Plaintiff here is not seeking to offer new evidence, and

6    the Court does not find the issue waived.

7         A.   ALJ did not err in determining Plaintiff had a marginal education

8         Plaintiff's entire argument rests on the premise that Plaintiff had an "inability" to read.

9    ECF No. 16 at 6. However, substantial evidence supports the ALJ's determination that Plaintiff

10   had a marginal education. AR 32. Marginal education is a defined term: "Marginal education

11   means ability in reasoning, arithmetic, and language skills which are needed to do simple,

12   unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is

13   a marginal education." 20 C.F.R. § 416.964(b)(2).

14        Plaintiff points to testimony from a prior 2012 administrative hearing in support of the

15   argument that Plaintiff is unable to read. ECF No. 16 at 5, *citing* AR 69. Plaintiff summarizes

16   the testimony as: "Kincade informed the ALJ that he was not able to read the records because

17   he's not good at reading." AR 69. The exchange was as follows:

18        ALJ:  You didn't read them?  You didn't read the records?

19        CLMT: Not really.  I'm not that good at reading.

20   AR 69. Plaintiff did not testify he was "not able" to read, he said he had "not really" read the

21   records because he is "not that good" at reading. This is consistent with Plaintiff's testimony at

22   the 2023 hearing that he has "trouble reading." AR 56. In his decision, the ALJ acknowledged

23   evidence in the record of "difficulty reading." AR 30. The ALJ did not impermissibly discount

24   Plaintiff's testimony about having trouble reading. The ALJ also found he had a "marginal

25   education," which is consistent with Plaintiff's testimony that he has a sixth-grade education. AR

26   71.

27        Social Security Ruling (SSR) 20-1p interprets the applicable regulation on determining an

28   individual's educational category and states in relevant part:

II. Category of Illiteracy

**A. Generally**

We consider an individual illiterate if he or she cannot read or write a simple message, such as instructions or inventory lists, even though the individual can sign his or her name. *We will assign an individual to the illiteracy category only if the individual is unable to read or write a simple message in any language.*

**B. Formal Education and the Ability To Read and Write a Simple Message**

Generally, an individual's educational level is a reliable indicator of the individual's ability to read and write a simple message. A strong correlation exists between formal education and literacy, which under our rules means an ability to read and write a simple message. *Most individuals learn to read and write at least a simple message by the time they complete fourth grade*, regardless of whether the schooling occurred in the United States or in another country. We will therefore use an individual's formal education level as the starting point to determine whether the individual is illiterate. (emphasis added)

SSR 20-1p: How We Determine an Individual's Education Category, 2020 WL 1083309 (March 9, 2020).

Plaintiff completed a sixth-grade education. The field office disability report indicated that Plaintiff could both read and write a simple message. AR 263. Plaintiff completed the several page Function Report, which indicates some ability to read and write. AR 293-300. The medical record supports the proposition that Plaintiff has difficulties reading. AR 674 ("problems reading", "Read something then forgets"); 675 ("He had problems learning to read as a small child"); 679 ("Have problems reading"). The Court also acknowledges some inconsistency in how Plaintiff's reading ability is reported in the medical records. For example, at a visit with Dr. Lofthouse in March 2022, the office visit narrative states that Plaintiff "is not able to read a form," but then also states he "struggled with reading" and states: "If he reads a book, he forgets the page that he read before. Always had that problem, forgetting what he read. Taking Adderal, helps him to remember more that he might read." AR 680. At a psychiatric assessment in

8

1    December 2022, the note refers to "ADHD and inability to read". AR 2092. Another note from

2    March 2022 refers to a "marked inability to read simple words." AR 2124. Then in April 2022,

3    it's described as forgetting what he has read and "not able to read effectively," with a

4    recommendation for tutoring. AR 2127.

5         There may be ambiguity in the record about the severity of Plaintiff's reading challenges,

6    but that ambiguity is for the ALJ to resolve. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

7    Cir. 2001) ("ALJ is responsible for determining credibility, resolving conflicts in the medical

8    testimony, and resolving ambiguities."). If the evidence is susceptible to more than one rational

9    interpretation, the Court may not substitute its judgment for that of the Commissioner. *Id*. The

10   ALJ's determination that Plaintiff had "difficulty" reading and a "marginal education" is

11   supported by substantial evidence.

12        B.  <u>There was no obvious or apparent conflict for the ALJ to resolve</u>

13        Plaintiff argues there was a conflict between his inability to read and the jobs the VE

14   identified because they were language level 1. ECF No. 16 at 6-8. This argument fails for

15   several reasons. First, as explained above, the ALJ determined Plaintiff had a "marginal

16   education," not that he was illiterate, and that decision is supported by substantial evidence.

17   Second, as the Defendant argues, language level 1 is the lowest language level in the Dictionary

18   of Occupational Titles ("DOT"). ECF No. 19 at 7. There is not an apparent conflict with finding

19   that someone with a "marginal education" can perform an occupation at language level 1.

20        Other courts have reached similar conclusions. In *Maria L v. Dudek*, 2025 WL 1243814

21   (E.D. Wash. April 29, 2025), claimant argued that she should have been deemed illiterate based

22   on her sixth-grade education in Mexico and ability to read and write simple sentences in Spanish.

23   The court found the ALJ's finding of "marginal education" was supported, and that there was no

24   conflict between her marginal education and the ability to perform the jobs identified, which were

25   at language level 2 or lower. *Id*. at 5.

26        In this case, the VE identified the occupations of Cleaner II, DOT 919.687-014;

27   Commercial Cleaner, DOT 381.687-014; and Housekeeping Cleaner, DOT 323.687-014. AR 60-

28   61. These are all unskilled positions and a person with a marginal education is generally deemed

9

1  to have the "language skills which are needed to do simple, unskilled types of jobs."  20 C.F.R. §

2  416.964(b)(2).  The VE confirmed that her testimony was consistent with the DOT.  AR 64-65.

3  Plaintiff's counsel questioned the VE, but did not ask any questions about illiteracy or ability to

4  read.  AR 61-64.  "Language Level 1 is the lowest language development contemplated by the

5  DOT."  *Obeso v. Colvin*, 2015 WL 10692651, *15 (E.D. Cal. April 20, 2015).  The finding that

6  Plaintiff had a "marginal education" did not present an obvious or apparent conflict with the

7  language level 1 occupations identified by the VE.  *See Gutierrez v. Colvin*, 844 F.3d 804, 808

8  (9th Cir. 2016) ("For a difference between an expert's testimony and the Dictionary's listings to

9  be fairly characterized as a conflict, it must be obvious or apparent."); *see also Pinto v.*

10  *Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not per se disabled if he or she is

11  illiterate.").  Other courts have found that even a finding of illiteracy is not inconsistent with

12  language level 1 jobs.  *See Johnson v. Astrue*, 2013 WL 3956248, *12 (N.D. Cal. July 30, 2013)

13  ("DOT does not preclude illiterate individuals from performing level 1 language jobs, otherwise

14  illiteracy would be a per se disability."); *Meza v. Astrue*, 2011 WL 11499, *21 (N.D. Cal. Jan. 4,

15  2011) ("In this case, both the job of small products assembler and hand packager have a language

16  level of one.  Therefore, illiteracy is not inconsistent with the jobs that the VE testified that

17  Plaintiff could perform.").

18      As stated above, the ALJ did not find Plaintiff was illiterate, rather the ALJ found

19  "difficulty" reading and a marginal education.  That finding was supported by substantial

20  evidence.  The VE identified three unskilled occupations at language level 1 that Plaintiff could

21  perform.  Additionally, the ALJ found Plaintiff had no exertional limitations and could perform a

22  full range of work at all exertional levels.  That finding is unchallenged.  The ALJ's ultimate non-

23  disability determination is supported by substantial evidence.

24                    **VII.  CONCLUSION**

25      The Court has considered the ALJ's decision and Plaintiff's arguments and finds the

26  ALJ's decision is supported by substantial evidence.  *See Biestek v. Berryhill*, 587 U.S. 97, 103

27  (2019) (substantial evidence "means—and means only such relevant evidence as a reasonable

28  mind might accept as adequate to support a conclusion") (internal quotation and citation omitted).

1    Accordingly,

2        **IT IS HEREBY ORDERED:**

3        1.  Plaintiff's motion for summary judgment (ECF No. 16) is DENIED;

4        2.  The Commissioner's cross-motion for summary judgment (ECF No. 19) is

5            GRANTED; and

6        3.  The Clerk shall enter Judgment in favor of the Commissioner and close this case.

7        SO ORDERED.

8    DATED:  August 25, 2025

9

10               SEAN C. RIORDAN

11               UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28